UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

THOMAS DUKE,

    Plaintiff,

v.

FRED C. NACHTIGAL and NACHITIGAL
EISENSTEIN & ASSOCIATES
ATTORNEYS AT LAW, an Oregon
co-partnership,

    Defendants.

Case No. 3:10-cv-00371-HA

OPINION AND ORDER

HAGGERTY, District Judge:

    Plaintiff filed this action against defendants seeking damages for alleged violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*.; the Oregon Unlawful Debt Collection Practices Act (ODCPA), Oregon Revised Statute (ORS) 646.639 *et seq*.; malicious prosecution of civil proceedings; and conversion. Defendants have filed a Motion for Summary Judgment seeking dismissal of all claims. For the following reasons, defendants' Motion for Summary Judgment [30] is GRANTED.

1 - OPINION AND ORDER

**BACKGROUND**

The following facts are stated in the light most favorable to plaintiff, the non-moving party and are undisputed unless noted.

This action arises from a series of unfortunate incidents stemming from the prosecution of a judgment secured against plaintiff on behalf of a homeowner's association.

Fred Nachtigal (Nachtigal) is a partner at the law firm of Nachtigal Eisenstein & Associates (the firm) (collectively "defendants"). Counted among the firm's clients are four homeowner's associations (HOAs) including the Jackson School Homeowners Association (JSHOA). At all material times, Nachtigal acted as the JSHOA's general counsel.

In the course of defendants' representation of the four HOAs, defendants have sent collection letters to the residents of all four HOAs. Nachtigal has filed liens on behalf of the JSHOA and one other HOA. Defendants also perform some debt collection work for other businesses aside from the HOAs. Over the past five years, Nachtigal estimates that he has issued approximately six writs of garnishment per year. During the relevant time period, debt collection activities comprised, at most, 3.2 percent of defendants' law practice. Defendants do not employ any one person to exclusively handle debt collection activities, though it appears a majority of the debt collection work conducted by the firm's staff is handled by one paralegal, Beverley Taylor. Ms. Taylor's primary responsibilities include working on domestic relations matters, adoptions, and personal injury cases. Defendants use a form letter when noticing a homeowner that a lien has been filed.

In March, 2006, plaintiff Thomas Duke purchased a home located on Goldie Drive within the JSHOA. Prior to moving to the Goldie Drive property, plaintiff had lived in a residence on Lois Street, located outside the JSHOA. Sometime after moving to the Goldie Drive property,

2 - OPINION AND ORDER

plaintiff fell behind on his homeowner's dues and assessments. On February, 1, 2008, defendants obtained a judgment lien against plaintiff in Washington County Circuit Court[1] on behalf of the JSHOA for a total of $2,580.40 in unpaid homeowner's dues and assessments, costs, and attorney fees. Defendants placed the judgment lien on the Lois Street property. On February 18, 2008, plaintiff entered into an agreement to sell that property in a "short sale." The judgment lien jeopardized the short sale of the Lois Street property and plaintiff sought to satisfy or otherwise release the lien. On April 3, 2008, a representative from Pacific Northwest Title of Oregon (PNTO), contacted Nachtigal in an effort to close the sale. Nachtigal made a demand of $7,806.70 on behalf of the JSHOA to release the lien. On April 8, 2008, Nachtigal agreed to accept $3,900.00 from plaintiff in exchange for the release of the lien and "a partial satisfaction of judgment in the sum of $3,900." Pl's Ex. 7 pg. 83.

On April 30, 2008, the sale on the Lois Street property closed and on the same day defendants received the $3,900.00 payment from the proceeds of the sale. The JSHOA chose to utilize the money as a partial satisfaction of the judgment and to use the bulk of the payment towards accrued interest, and unpaid HOA dues and assessments incurred post judgment. On May 6, 2008, the JSHOA executed a release of the lien only, stating that the judgment itself would remain in effect. Defendants did not prepare the executed release. A partial satisfaction of judgment was not filed in Washington County Circuit Court.

On July 24, 2008, Nachtigal obtained an order requiring plaintiff to appear on August 23, 2008 in Washington County Circuit Court to sit for a judgment debtor exam. Plaintiff failed to appear for the exam.

---

[1] Both the Lois Street and Goldie Drive residences are located in Washington County, Oregon.

3 - OPINION AND ORDER

On August 11, 2008 plaintiff was arrested in Washington County on a Clatsop County warrant stemming from his failure to appear at a call for trial on a charge of driving while suspended. Plaintiff was released on bail. On December 4, 2008, plaintiff pled guilty to driving while suspended and was sentenced to five days with the Clatsop County Supervisory Authority. Plaintiff failed to surrender himself to serve the sentence.

On March 9, 2009, defendants obtained a second order requiring plaintiff to appear for a judgment debtor exam in Washington County Circuit Court on June 22, 2009. In the affidavit submitted in support of the motion for a judgment debtor exam, Nachtigal averred that the judgment remained unsatisfied.

On April 13, 2009, Clatsop County issued another warrant for plaintiff's arrest for his failure to serve the five-day sentence. Plaintiff also did not appear for the second judgment debtor exam, and defendants requested that a contempt warrant be issued by the Washington County Circuit Court for plaintiff's arrest. On July 2, 2009, the Washington County Circuit Court issued a warrant for plaintiff's arrest setting bail at $6,159.00. Plaintiff contends that he did not appear for the judgment debtor exam or show cause why he should not be held in contempt because he believed he had already satisfied the judgment.

Plaintiff was arrested on July 11, 2009 at his Goldie Drive residence on the warrants issued in both Washington County and Clatsop County. He was held on the Clatsop County warrant without bail until he could be transported to Clatsop County following resolution of the Washington County charges. On July 13, 2009, plaintiff was arraigned on the Washington County Warrant. Plaintiff did not post bail. While plaintiff was in jail, plaintiff's attorney emailed Nachtigal requesting that the judgment debtor exam take place after plaintiff's release from jail. On July 21, 2009, plaintiff stipulated to the contempt charge and was released on the

4 - OPINION AND ORDER

Washington County warrant, though plaintiff remained incarcerated on the Clatsop County warrant until he was transported to Clatsop County on July 23, 2009. He was released on July 24, 2009 for time served in Washington County.

Following his release from jail, plaintiff's attorney wrote Nachtigal inquiring as to why the $3,900.00 had not satisfied the judgment in full and why no satisfaction of judgment, partial or otherwise, had been filed. Nachtigal responded to that inquiry by stating that plaintiff owed the JSHOA more than $3,900.00 and the payment had "nothing to do with full satisfaction of the judgment." Pl's Ex. 7 pg. 115. On September 4, 2009 plaintiff filed a Motion to Satisfy Money Award in Washington County. On September 9, 2009, defendants filed a partial satisfaction of judgment in the amount of $3,900.00. Plaintiff filed a proposed order on his Motion to Satisfy Money Award and in response, Nachtigal filed an affidavit explaining how he believed the JSHOA applied the $3,900.00 payment to plaintiff's debt stating that the payment was first applied to the most recent debts with $1,319.60 of the payment applied to the judgment leaving a balance of $886.00. On October 6, 2009, the court held a hearing on the JSHOA's objections to the order proposed by plaintiff, during which Nachtigal agreed to a full satisfaction of the judgment.

At a subsequent hearing on plaintiff's petition for attorney fees, Nachtigal explained that he agreed to full satisfaction of the judgment as a result of the confusion caused by his April 8, 2008 letter in which he had agreed to a partial satisfaction of the judgment in the amount of $3,900.00. Nachtigal concedes that a partial satisfaction of the judgment in that amount would have in fact been a full satisfaction of the judgment. Plaintiff's petition for attorney fees was denied. On May 4, 2010, defendants provided plaintiff with a check for $7,503.16 for payment, in part, of the economic damages alleged in this case.

5 - OPINION AND ORDER

**STANDARDS**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). Once the moving party meets its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine dispute for trial. *Id.* at 248-49. All reasonable doubt as to the existence of a genuine factual dispute should be resolved against the moving party. *MetroPCS, Inc. v. City & County of San Francisco*, 400 F.3d 715, 720 (9th Cir. 2005) (citation omitted).

However, deference to the non-moving party has limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient; there must be evidence on which the jury could reasonably find for [the non-moving party]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted).

**DISCUSSION**

Plaintiff brings four claims alleging violations of the FDCPA, ODCPA, malicious

prosecution of civil proceedings, and conversion. Defendants moves for summary judgment on all four claims in plaintiff's First Amended Complaint.

   1.   **First Claim for Relief - FDCPA**

Plaintiff alleges that defendants violated a number of sections of the FDCPA. Importantly, plaintiff's FDCPA allegations are each predicated on defendants status as "debt collectors" within the meaning of the Act, and defendants assert that they are not in fact debt collectors. Therefore, before analyzing the substance of plaintiff's FDCPA claim, this court must determine whether, as a matter of law, defendants are not debt collectors. "The plaintiff in an FDCPA action bears the burden of proving [a] defendant's debt collector status." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 60 (2nd Cir. 2004).

The term "debt collector" is defined in the FDCPA as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to owed or due another." 15 U.S.C.A. § 1692a(6). As such, this court must determine whether defendants regularly collect or attempt to collect debts owed to third parties.[2]

The Ninth Circuit has held that attorneys may fall within the purview of the act if they meet the definition of debt collectors. *Fox v. Citicorp Credit Serv.*, 15 F.3d 1507, 1512-13 (9th Cir. 1994). However, as is clear from the language of the act, such attorneys must regularly collect or attempt to collect debt. The *Fox* court did not provide analysis of what it means to regularly collect debt, but did conclude unsurprisingly that the defendant attorney was a debt

---

[2] Plaintiff does not contest that the principal purpose of defendants' business is not debt collection.

collector when, during the material time period, 80 to 100 percent of his practice was in the area of debt collection. *Id.* at 1513 n.5. In *Riley v. Giguiere*, the district court for the Eastern District of California used a dictionary and thesaurus to define "regular" to mean "appearing or occurring repeatedly from time to time," and as being synonymous with "frequent, habitual, periodic, repeated, [and] steady." 631 F. Supp. 2d 1295, 1303 (E.D. Cal. 2009). Keeping those definitions in mind, the court concluded that an attorney was a debt collector where collections actions constituted 40 to 50 percent of her total work, she had at least one client for whom she performed exclusively debt collection work, for a single client the defendant had filed forty debt collection cases in the previous three years, and her debt collection work for just two of her clients comprised nearly 10 percent of her practice. *Id.* at 1303-04. Based on these facts, the court found that the number of debt collection clients, their proportion of her total workload, and the frequency with which she engaged in debt collection activities all supported a conclusion that the defendant regularly collected debts. *Id.* at 1304. Other circuits analyzing the question of whether an attorney regularly collects debts have analyzed the question in a manner similar to that by the *Riley* court.

The Second Circuit has held that regularity should be assessed on a case by case basis based on factors including:

> (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.

8 - OPINION AND ORDER

*Goldstein*, 374 F.3d at 62-63.

Plaintiff points to a number of out-of-circuit cases where courts have held that it was a question for the jury when debt collection constituted a relatively minor portion of the attorney's practice. *See, e.g.*, *Garrett v. Derbes*, 110 F.3d 317, 318 (5th Cir. 1997) (collection work for client only constituted .5 percent of attorney's practice); *Stojanovski v. Stobl and Manoogian, P.C.*, 783 F. Supp. 319, 321 (E.D. Mich. 1992) (bill collection constituted 4 percent of firm's business); *Silva v. Mid. Atlantic Mgmt. Corp.*, 277 F. Supp. 2d 460, 465 (E.D. Pa. 2003) (debt collection work only constituted 1 percent of firm's activities). This court is not persuaded by plaintiff's reference to these cases. It is the regularity of debt collection practices that is important, not necessarily how large a percentage of the firm's revenue or work such activities constitute.

While in each of the cases cited above debt collection activities constituted roughly the same proportion of the firm's activities as the case at bar, there were other factors contributing to the regularity of their debt collection activities. *See Garrett*, 110 F.3d at 317 (firm hired specifically to collect debts on behalf of telephone company and sent 639 demand letters in nine month period); *Stojanovski*, 783 F. Supp. at 321 (firm was collecting debts on behalf of credit corporation with many accounts); *Silva*, 277 F. Supp. 2d at 465 (firm accepted at least ten collection matters every year). *See also Goldstein*, 374 F.3d at 62 (question of fact where attorney had sent 145 three-day notices in one-year period); *Schroyer v. Frankel*, 197 F.3d 1170, 1173, 1177 (6th Cir. 1999) (firm was not a debt collector even though they handled 50-75 collection cases annually, but did not maintain staff for debt collection, and debt collection activity came from non-collection business clients); *Scott v. Jones*, 964 F.2d 314, 316-18 (4th Cir. 1992) (firm and lawyer were debt collectors where they had regular ongoing relationship

9 - OPINION AND ORDER

with delinquent debt division of credit card issuer and 70-80% of revenues were generated by debt collection).

In this matter, it is readily apparent that defendants do not conduct debt collection activities with sufficient regularity to come within the scope of the FDCPA. During the relevant time period, defendants' debt collection activities have at most constituted 3.2 percent of their work load, defendants do not have any staff solely dedicated to collection activities, defendants do not appear to have any consumer credit clients, and Nachtigal has only issued six writs of garnishment per year. Rather, it appears that debt collection activities constitute a relatively minor and infrequent part of both Nachtigal's and the firm's practice, and is performed predominantly for HOAs that have existing relationships (outside of debt collection) with the firm. Accordingly, defendants are granted summary judgment on plaintiff's FDCPA claim.

2. **Second Claim for Relief - ODCPA**

Plaintiff asserts a claim that defendants violated two provisions of the ODPCA. Under the ODCPA, there is no question that defendants qualify as debt collectors. Under the statute a debt collector may not:

> (k) Attempt to or threaten to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist, or threaten to take any action which the debt collector in the regular course of business does not take . . .
> (n) Collect or attempt to collect any interest or any other charges or fees in excess of the actual debt unless they are expressly authorized by the agreement creating the debt or expressly authorized by law.

ORS 646.639(2).

Defendants, relying on two Oregon cases, contend that the prosecution of civil proceedings in court does not violate the provisions of ORS 646.639(2)(k) and (n). In *Porter v. Hill*, the Oregon Supreme Court held that "filing a civil action to collect an alleged debt is not an

10 - OPINION AND ORDER

act attempting to enforce a 'right' or 'remedy' proscribed by ORS 646.639(2)(k) merely because all or part of the alleged debt does not exist.  838 P.2d 45, 50 (Or. 1992).  The court reasoned that "filing a legal action resolves issues surrounding a debt in a proper manner, no duplicitously, or coercively."  *Id*.  In *Hedrick v. Spear*, the Oregon Court of Appeals extended *Porter*'s ruling to hold that, as used in ORS 646.639(2)(n), "collection does not encompass the filing of a legal action."  907 P.2d 1123, 1128 (Or. Ct. App. 1995).  The court found that "the filing of a legal action seeking to recover allegedly unauthorized charges is not . . . prohibited by ORS 646.639(2)(n) [because] it is a correct means of resolving a disputed debt and charges."  *Id*.

Plaintiff responds that the present case is distinct from those in *Porter* and *Hedrick* arguing that defendants used supplemental judicial proceedings based on misrepresentations to the court in order to collect on a judgment that had already been satisfied.  Plaintiff points to a footnote in *Porter* in support of his argument.  The *Porter* court noted that in a case where the parties were bound to submit their claims to arbitration instead of filing a civil action, the filing of a civil action might fall within the scope of ORS 646.639(2)(k) because the plaintiff would arguably have knowledge that the right or remedy (the filing of a civil action) does not exist.  838 P.2d at 49 n.4.  In short, plaintiff argues that because a satisfaction of judgment should have been filed, the supplemental judicial proceedings instituted by defendants were not rights or remedies available to them.

Plaintiff's reliance on this footnote is misplaced.  The fact that the judgment should have been declared satisfied does not render disputes over the judgment outside the purview of a civil court's jurisdiction.  Plaintiff's assertion that the supplemental judicial proceedings (judgment debtor exam, contempt proceedings, and issuance of a warrant) are unlike the filing of a civil action draws a distinction without a difference.  While it is unquestionable that defendants should

11 - OPINION AND ORDER

have filed at least a partial satisfaction of judgment, there remained an outstanding debt with the JSHOA. That there was disagreement over whether the judgment had been partially, fully, or completely unsatisifed matters little. The provisions of the ODCPA are meant to proscribe abusive *means* of collecting a debt or possible debt. Civil judicial proceedings are not an abusive *means* of collecting a debt, regardless of whether the disputed debt turns out to be a valid debt. Civil judicial proceedings, whether the filing of a new case or the resolution of disputes regarding a judgment, are a correct and lawful means of resolving a dispute. Plaintiff need only have appeared in court when ordered to have avoided this unfortunate situation. In court he would have had the opportunity to present evidence and demonstrate that he had or had not satisfied the judgment. That, in part, is why courts exist. That he thought he had satisfied the judgment, whether that belief was correct or not, does not provide him with the luxury of ignoring a court's orders to appear. Defendants are awarded summary judgment on plaintiff's second claim for relief.

      **3.     Third Claim for Relief - Malicious Prosecution of a Civil Action**

To prevail on plaintiff's claim for malicious prosecution of a civil action, he must prove: (1) the commencement of a judicial proceeding against the plaintiff by the defendants; (2) the resolution of the proceeding in plaintiff's favor; (3) the absence of probable cause to prosecute the action; (4) the existence of malice or a primary purpose other than securing an adjudication of the claim; and (5) damages. *Alvarez v. Retail Credit Ass'n of Portland, Or.*, 381 P.2d 499, 501 (Or. 1963). Defendants contend that they had probable cause to institute the actions taken against plaintiff, and that there is no evidence defendants acted with malice.

Whether defendants acted with probable cause is a question of law once the facts have been determined. *Perry v. Rein*, 71 P.3d 81, 84 (Or. Ct. App. 2003). In the context of a suit for

12 - OPINION AND ORDER

malicious prosecution, "probable cause means that the person initiating the civil action reasonably believes that he or she has a good chance of prevailing—that is, he or she subjectively has that belief and the belief is objectively reasonable." *Roop v. Parker Northwest Paving, Co.*, 94 P.3d 885, 896 (Or. Ct. App. 2004) (citation and quotation omitted). Based on this court's review of the facts, drawn in a light most favorable to plaintiff, it is abundantly clear that defendants subjectively believed that they had a good chance of prevailing in the civil matters instituted against plaintiff. It is equally clear that their subjective belief was objectively unreasonable. Put another way, there is no question that Nachtigal believed plaintiff had outstanding debts on the judgment and additional debts accrued with the JSHOA. However, in light of the fact that he had signed a letter stating that he would file a partial satisfaction of the judgment in the amount of $3,900.00, it was objectively unreasonable for him to pursue further action on the judgment. The filing of a satisfaction in the amount of $3,900.00 would have been a full satisfaction. Quite simply, Nachtigal made a mistake both in failing to file a partial satisfaction of the judgment, and in failing to make clear that the bulk of the $3,900.00 was to be used to pay plaintiff's more recent debts. These mistakes made it objectively unreasonable for him to proceed against plaintiff based on the outstanding judgment. Accordingly, defendants lacked probable cause to continue their pursuit of the full satisfaction of the judgment.

However, there is absolutely no evidence that defendants were motivated by malice, or in other words had a primary purpose other than securing the delinquent funds owed to the JSHOA. Although a jury may draw an inference of malice where an attorney proceeds without probable cause in many cases, such an inference may not always be drawn. *Bachmeier v. Tuttle*, 96 P.3d 871, 875 (Or. Ct. App. 2004). In such cases, if there is "some evidence of wanton or reckless failure to exercise any care in learning the facts, or evidence of some oppressive and flagrant

13 - OPINION AND ORDER

disregard for the rights of [the plaintiff], there might [be] some justification for submitting the issue of malice to the jury." *Crouter v. United Adjusters, Inc.*, 485 P.2d 1208, 1215 (Or. 1971) (citation and quotation omitted).

In this case, there is no evidence that defendants were motivated by malice as a primary or partial purpose in their pursuit of the JSHOA's claims. Rather, defendants' pursuit, albeit an aggressive one, of plaintiff was motivated by nothing other than a desire to secure the funds owing the JSHOA. That they used the lien, the show cause hearings, or the issuance of a warrant to leverage their position does not lead to an inference that they were acting with malice. Similarly, Nachtigal's mistakes pertaining to the partial satisfaction of judgment do not support an inference of malice, only to the conclusion that he lacked probable cause. To succeed on a claim for malicious prosecution plaintiff must put forth evidence that defendants acted "*both without probable cause . . . and* for an improper purpose." *Bachmeier*, 96 P.3d at 875 (quotation and citation omitted). Plaintiff insists evidence of a malicious motive exists; arguing that Nachtigal was essentially attempting to extort plaintiff and was threatening to push for plaintiff's further incarceration if plaintiff did not pay the additional amounts the JSHOA claimed were owing. Plaintiff grasps at straws that do not exist and pushes for an interpretation of the events that far exceeds this court's duty to review the facts in the light most favorable to the nonmoving party. As no evidence of malice exists, this court grants summary judgment to defendants on plaintiff's malicious prosecution claim.

   **4.**  **Fourth Claim for Relief - Conversion**

Plaintiff's fourth claim for conversion is for those amounts he paid in excess of the amount required to satisfy the judgment in order to secure the release of the JSHOA's lien on the Lois Street property. Plaintiff proceeds on a theory that defendants intentionally misrepresented

14 - OPINION AND ORDER

the amount needed to satisfy the judgment and used plaintiff's need to close the sale of the property to extract additional funds from him. In short, plaintiff asserts that he was induced by fraud and duress to pay the JSHOA more than he owed them.

Conversion "is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor must justly be required to pay the other the full value of the chattel." *Hemstreet v. Spears*, 579 P.2d 229, 233 (Or. 1978) (quotation and citation omitted). "[T]he gravamen of the tort is the defendant's intent to exercise control over the chattel inconsistently with the plaintiff's rights." *Naas v. Lucas*, 739 P.2d 1051, 1052 (Or. Ct. App. 1987). Fraud must be proven by clear and convincing evidence and the plaintiff must offer evidence not only that a "representation was false, but that it was made with knowledge that it was false or was made recklessly without any knowledge of its truth." *Huszar v. Certified Realty Co.*, 562 P.2d 1184, 1186 (Or. 1977). "Duress exists when one by the unlawful act of another is induced to make a contract or perform some act under circumstances which deprive him of the exercise of free will." *Guinn v. Sumpter Valley Ry. Co.*, 127 P. 987, 989 (Or. 1912) (citation and quotation omitted). There is no basis in law or fact supporting plaintiff's claim of conversion, whether by fraud, duress, or otherwise. Defendant is granted summary judgment on plaintiff's conversion claim.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

15 - OPINION AND ORDER

**CONCLUSION**

For the reasons provided, defendant's Motion for Summary Judgment [30] is GRANTED.

The pretrial conference is hereby stricken from the court's calendar.

IT IS SO ORDERED.

DATED this  19th   day of January, 2012.

                                                /s/ Ancer L. Haggerty
                                                  Ancer L. Haggerty
                                            United States District Judge